

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00439-CR
### NO. 02-12-00440-CR

DEREK MAURICE ROOTS                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellant Derek Maurice Roots appeals from his convictions for assault against a member of his family or household and aggravated assault with a deadly weapon. In both cases, we affirm.

## Background Facts

In separate cases, a grand jury indicted appellant for third-degree-felony assault against a member of his family or household[1] and aggravated assault with a deadly weapon.[2] Each indictment contained an enhancement paragraph alleging that appellant had been convicted of a felony in 1997. In each case, appellant judicially confessed and pled guilty pursuant to a plea bargain agreement. The trial court deferred its adjudication of appellant's guilt in each case and placed him on community supervision, with explicit conditions, for eight years. The trial court also found the indictments' enhancement paragraphs to be true. In the case for aggravated assault with a deadly weapon, the trial court's deferred adjudication order did not express a deadly-weapon finding.[3]

---

[1]The indictment for this charge alleged that appellant had impeded the victim's normal breathing or circulation of blood by applying pressure to her throat or neck with his hand. *See* Tex. Penal Code Ann. § 22.01(b)(2)(B) (West Supp. 2013).

[2]*See id.* § 22.02(a)(2) (West 2011).

[3]Contrary to a statement in appellant's reply brief, a deadly-weapon finding would not have precluded appellant's placement on deferred-adjudication community supervision. *See Cabezas v. State*, 848 S.W.2d 693, 694 (Tex. Crim. App. 1993) (explaining that straight community supervision and deferred-adjudication community supervision have different eligibility requirements under the code of criminal procedure); *West v. State*, 702 S.W.2d 629, 634 (Tex. Crim. App. 1986); *Rodriguez v. State*, 939 S.W.2d 211, 221 n.15 (Tex. App.—Austin 1997, no pet.) (op. on reh'g); *see also Narez v. State*, No. 05-08-00547-CR, 2009 WL 4912736, at *2 (Tex. App.—Dallas Dec. 22, 2009, no pet.) (mem. op., not designated for publication) ("When there is an affirmative deadly[-]weapon finding, the trial court may order deferred adjudication and impose community supervision.").

Less than two years later, the State filed petitions for the trial court to proceed with the adjudication of appellant's guilt of the charges, alleging that he had committed a new offense, had failed to report to the community supervision office, and had failed to pay fees. At a hearing, appellant pled true to some of the petitions' allegations. After receiving evidence, the trial court found all of the allegations in the petitions to be true, revoked appellant's community supervision, and convicted him of each charge.

As to appellant's charge for assault on a member of his family or household, the trial court sentenced him to twenty years' confinement. Concerning appellant's charge for aggravated assault with a deadly weapon, the trial court sentenced him to twenty-five years' confinement. The trial court's initial judgment in the case for aggravated assault with a deadly weapon stated "N/A" with respect to whether the trial court had entered a deadly-weapon finding. The trial court ordered the sentences to run concurrently.

After appellant filed a notice of appeal in both cases, the State filed a motion for a judgment nunc pro tunc in the aggravated assault case. In the motion, the State alleged that the "N/A" statement concerning whether the trial court had entered a deadly-weapon finding was a clerical error because the trial court had made a deadly-weapon finding by adjudicating appellant's guilt for aggravated assault with a deadly weapon. Thus, the State asked the trial court to enter a new judgment that contained the entry of an affirmative deadly-weapon finding. At the hearing on the State's motion, a prosecutor explained,

3

The indictment in the underlying case, the [aggravated] assault case, says he threatened a female victim . . . with a firearm. Had that not been a deadly weapon, obviously that wouldn't have been a felony. . . . So the fact that he was convicted of a felony necessitates the fact that the Court found it was a deadly weapon to give him this felony conviction.

The reason we care about this is that on a 25-year sentence, [appellant] is showing to be eligible for parole in 2014, which is calculated incorrectly. I have talked to the . . . time calculation department. They told me that the reason they're calculating it that way is because the face of the judgment does not say yes, finding of deadly weapon, yes. It says NA. That NA on this judgment . . . is a clerical error.

At the end of the hearing, the trial court granted the State's motion and entered a nunc pro tunc order stating that a deadly weapon—specifically, a firearm—had been used in the offense. In granting the State's motion, the trial court stated, "I believe that by pleading guilty to aggravated assault with a deadly weapon and then me finding him guilty of aggravated assault with a deadly weapon that that makes the specific finding that there was a deadly weapon based on the charge contained in the indictment."

**The Assault Conviction**

In cause number 02-12-00439-CR, which is the appeal from appellant's conviction for assault against a member of his family or household, his appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion. In the brief and motion, counsel avers that he has diligently reviewed the record and that appellant's appeal in cause number 02-12-00439-CR is frivolous. Counsel's brief and motion meet the requirements of *Anders v.*

4

*California* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds for relief. 386 U.S. 738, 744–45, 87 S. Ct. 1396, 1400 (1967); *see In re Schulman*, 252 S.W.3d 403, 406–12 (Tex. Crim. App. 2008) (orig. proceeding) (analyzing the effect of *Anders*). Appellant had an opportunity to file a pro se response to his counsel's brief but did not. The State has not filed a brief in cause number 02-12-00439-CR.

Once an appellant's court-appointed attorney files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of *Anders*, we must independently examine the record. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Alexander v. State*, 301 S.W.3d 361, 363 (Tex. App.—Fort Worth 2009, no pet.). Only then may we grant counsel's motion to withdraw. *See Penson v. Ohio*, 488 U.S. 75, 82–83, 109 S. Ct. 346, 351 (1988). We have carefully reviewed the record and counsel's brief. We agree with counsel that the appeal in cause number 02-12-00439-CR is wholly frivolous and without merit; we find nothing in the record that might arguably support the appeal. *See Bledsoe v. State*, 178 S.W.3d 824, 827–28 (Tex. Crim. App. 2005); *see also Meza v. State*, 206 S.W.3d 684, 685 n.6 (Tex. Crim. App. 2006). Accordingly, we grant counsel's motion to withdraw and affirm the trial court's judgment in cause number 02-12-00439-CR.

**The Aggravated Assault Judgment Nunc Pro Tunc**

In cause number 02-12-00440-CR, concerning appellant's conviction for aggravated assault with a deadly weapon, he has not expressly asked us to

5

reverse his conviction or sentence. Instead, he argues only that the trial court erred by granting the State's motion for a judgment nunc pro tunc and by therefore amending the judgment to include an explicit deadly-weapon entry that neither the deferred adjudication order nor the original judgment adjudicating guilt explicitly contained.

The court of criminal appeals has explained that the purpose of a nunc pro tunc judgment is to

> provide a method for trial courts to correct the record when there is a discrepancy between the judgment as pronounced in court and the judgment reflected in the record. The corrections must reflect the judgment that was actually rendered but that for some reason was not properly entered into the record at the time of the judgment.
>
> Corrections to the record are limited to clerical errors and are not appropriate for errors involving judicial reasoning. The determination of whether an error is clerical or judicial is a matter of law, but a *nunc pro tunc* judgment is improper if it modifies, changes, or alters the original judgment pronounced in court, or has the effect of making a new order. Furthermore, *nunc pro tunc* judgments may not be used by a court to change the record to reflect what the court believes should have occurred in the original proceeding.

*Blanton v. State*, 369 S.W.3d 894, 897–98 (Tex. Crim. App. 2012) (citations omitted); *see Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007) (explaining that through a judgment nunc pro tunc, a trial court can correct a clerical error in the record but cannot change a judgment to reflect what should have been done); *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988) ("The purpose of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not

6

entered of record at the proper time."); *Ex parte Dopps*, 723 S.W.2d 669, 670 (Tex. Crim. App. 1986) ("A nunc pro tunc order may be used to correct clerical errors in a judgment, but not judicial omissions."). The court of criminal appeals has implied that nunc pro tunc proceedings are appropriate to include something within a judgment when a statute has created a ministerial duty on the trial court to include it. *See Ex parte Ybarra*, 149 S.W.3d 147, 148 (Tex. Crim. App. 2004) (stating that the code of criminal procedure requires a trial court to grant presentence jail time credit and holding that if the trial court fails to do so, it may correct the judgment through a nunc pro tunc order); *see also Collins*, 240 S.W.3d at 928 (stating that an "*omission of any statutory back-time* in [a] judgment can be adjusted by a motion for judgment nunc pro tunc.") (emphasis added).

One purpose of entering an affirmative deadly-weapon finding is to assist in calculating a prisoner's parole eligibility date. *Kinkaid v. State*, 184 S.W.3d 929, 930 (Tex. App.—Waco 2006, no pet.); *see Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005) (explaining that although a deadly-weapon finding is not part of a defendant's sentence, the finding affects how the sentence will be served). Specifically, when a deadly-weapon finding has been made and entered in a judgment under section 3g(a)(2) of article 42.12 of the code of criminal procedure, an inmate is not eligible for release on parole until the inmate's "actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less."

Tex. Gov't Code Ann. § 508.145(d)(1) (West Supp. 2013).[4]  Section 3g(a)(2)

states that when a trial court makes an affirmative finding that a defendant used

or exhibited a deadly weapon during the commission of a felony offense, the

court "*shall enter the finding* in the judgment of the court."  Tex. Code Crim. Proc.

Ann. art. 42.12, § 3g(a)(2) (West Supp. 2013) (emphasis added).  Section

3g(a)(2) also states that on an "affirmative finding that the deadly weapon was a

firearm, the court *shall enter* that finding in its judgment."  *Id.* (emphasis added).

The court of criminal appeals has held that a factfinder may make an

affirmative deadly-weapon finding by simply convicting a defendant based upon

an indictment that expressly contained and required a deadly-weapon finding.

*See Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985)[5] ("[I]f the

indictment by allegation specifically places the issue before the trier of fact . . . ,

then an affirmative finding is de facto made when the defendant is found guilty

'as charged in the indictment.'"); *see also Crumpton v. State*, 301 S.W.3d 663,

664 (Tex. Crim. App. 2009) ("[T]he verdict expressly found the defendant guilty of

the offense 'as included in the indictment.'  The indictment expressly alleged that

the defendant committed the offense with 'a deadly weapon.'  The verdict's

---

[4]Normally, an inmate is eligible for parole when the inmate's actual calendar time served plus good conduct time equals one-fourth of the sentence imposed or fifteen years, whichever is less.  Tex. Gov't Code Ann. § 508.145(f).

[5]The court of criminal appeals has disagreed with the premise that *Polk* applies only to cases in which the jury was the factfinder on the issue of guilt. *See Hooks v. State*, 860 S.W.2d 110, 112 (Tex. Crim. App. 1993).

reference to the indictment therefore constituted a finding that that allegation was true."); *Ex parte Empey*, 757 S.W.2d 771, 774 (Tex. Crim. App. 1988) (holding that an affirmative deadly-weapon finding arose as matter of law when an indictment charged the defendant with the use of a deadly weapon and the judge found the defendant guilty as alleged in the indictment); *cf. Ruben v. State*, 645 S.W.2d 794, 798 (Tex. Crim. App. [Panel Op.] 1983) ("The indictment contains no mention of a 'deadly' weapon; therefore, the court acted improperly in entering its finding as to the use of a deadly weapon in the absence of such an affirmative finding by the jury, the appropriate trier of fact in this case."). A deadly-weapon finding may also be made as a matter of law, such as when the factfinder finds that a firearm, which is a deadly weapon per se, has been used in the commission of an offense. *Polk*, 693 S.W.2d at 394; *see* Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2013) (stating that "deadly weapon" includes a firearm).

We conclude that under *Polk*, the trial court made a deadly-weapon finding when it convicted appellant. Appellant's indictment expressly alleged that he intentionally or knowingly threatened bodily injury to a victim and that he used or exhibited a deadly weapon (specifically, a firearm) during the commission of the assault. Appellant's plea admonishments described his offense as "Agg Asst DW." In his judicial confession, appellant affirmed that he had read the indictment and that he had "committed each and every act alleged therein." He also affirmed that all of the facts alleged in the indictment were true. The trial

9

court's 2010 order deferring adjudication of appellant's guilt described his offense as "AGGRAVATED ASSAULT WITH A DEADLY WEAPON, TO WIT: A FIREARM." At the beginning of the September 2012 hearing on the State's petition for the trial court to adjudicate appellant's guilt, the trial court stated that appellant had been charged with aggravated assault with a deadly weapon. In the trial court's judgment adjudicating guilt, the court stated that appellant had been convicted of "AGGRAVATED ASSAULT WITH A DEADLY WEAPON, TO WIT: A FIREARM." Finally, while the judgment of conviction in this case does not expressly state that the trial court found appellant guilty as charged in the indictment, because the indictment did not allege that appellant caused serious bodily injury to the victim, had the trial court not found that appellant used or exhibited a deadly weapon, it could not have convicted him of aggravated assault at all. *See* Tex. Penal Code Ann. § 22.02(a); *see also Huskins*, 176 S.W.3d at 820 ("By properly admonishing applicant and then accepting his guilty plea to the indictment, the trial court necessarily determined that applicant used a deadly weapon in the commission of the offense."); *Lafleur v. State*, 106 S.W.3d 91, 93–94 (Tex. Crim. App. 2003) ("[T]he jury in this case could not have found appellant guilty of manslaughter without also expressly deciding that he used a firearm, a deadly weapon *per se*.").

Having made a deadly-weapon finding under the rationale of *Polk*, did the trial court have any discretion to not affirmatively enter that finding in the judgment of conviction? That question is more difficult to resolve, if only because

10

the court of criminal appeals appears to have answered it both ways. Three years after deciding *Polk*, in *Poe*, the court of criminal appeals decided a nunc pro tunc issue concerning the entry of a deadly-weapon finding under circumstances that were similar to those at issue in this case. Poe had been found guilty of murder by a jury, and although an affirmative finding concerning the use of a deadly weapon had not been specifically entered in his original judgment, his parole eligibility was being calculated as if a deadly-weapon finding had been entered. *See Poe*, 751 S.W.2d at 874. Poe filed an application for a writ of habeas corpus, and at the hearing on his application, the trial court amended the original judgment, by way of nunc pro tunc, to include the entry of a deadly-weapon finding. *Id.* at 875. On appeal, Poe contended that the trial court's nunc pro tunc judgment was erroneous. *Id.* Relying on *Polk*, the court of criminal appeals first concluded that the jury had made a deadly-weapon finding by finding Poe guilty as charged in the indictment, which had alleged the use of a handgun, a deadly weapon per se. *Id.* Then, considering the language of article 42.12 expressing that a trial court "shall" enter such a finding in a judgment, the court concluded that the trial court's nunc pro tunc judgment was proper, explaining,

> Article 42.12, . . . § 3g(a)(2), contemplates a two-step process. First, the trier of fact must make an affirmative finding that the defendant used or exhibited a deadly weapon. Second, after an affirmative finding is made by the trier of fact, the finding *shall* be entered in the judgment by the trial court.
>
> . . . .

11

Responding to a Texas Department of Corrections letter to the trial judge relative to whether an affirmative finding had been made and [Poe's] habeas corpus contentions, the trial judge ordered a judgment nunc pro tunc to correctly recite his findings on the use of a deadly weapon. The order recognized the failure of the original judgment to include a proper finding of the use or exhibition of a deadly weapon. . . . The applicant contends that the trial court was without authority to enter the nunc pro tunc judgment.

. . . .

As previously stated, Article 42.12 . . . *clearly mandates* that the trial judge *enter in the judgment* a finding that a deadly weapon was used or exhibited during the commission of an offense, *once the trier of fact makes* a proper affirmative finding as per *Polk*. In the present case, the trier of fact undoubtedly made such an affirmative finding. Once this determination had been made *the trial judge was required to reflect this by making a proper entry in the judgment. The trial judge retained no discretion to do otherwise.* Consequently, the failure of the trial judge to do so was not an error of judicial reasoning but rather an error of a clerical nature. *The trial judge did not err in correcting this error by entering a judgment nunc pro tunc which properly reflected what the trier of fact had determined.*

*Id.* at 875–76 (emphasis added) (citations omitted); *accord Curry v. State*, 720 S.W.2d 261, 263 (Tex. App.—Austin 1986, pet. ref'd) (stating that discretion on deadly-weapon findings exists in the first step of the process—the making of the finding—but that once the finding is made, "the statute imposes a mandatory duty on the trial court to enter the finding in the judgment").

Five years after concluding in *Poe* that the making of a deadly-weapon finding requires the entry of that finding in the judgment, a majority of the court of criminal appeals appeared to reach the opposite conclusion, if implicitly so, in *Hooks*, 860 S.W.2d at 113. Hooks had been charged and convicted for

12

committing aggravated assault with a deadly weapon, and the court resolved the question of whether that conviction precluded her placement on straight probation based on the deadly-weapon finding. *Id.* at 111; *see also* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (stating that a defendant may not be placed on court-ordered straight community supervision when it is shown that a deadly weapon was used or exhibited during the commission of a felony offense). Although the court referred to *Poe* and did not purport to overrule it, the court distinguished between the making and entering of a deadly-weapon finding and, contrary to *Poe*, implied that entering such a finding need not follow the making of such a finding. *See Hooks*, 860 S.W.2d at 113–14; *see also Dickson v. State*, 988 S.W.2d 261, 263 (Tex. App.—Texarkana 1998, pet. ref'd) ("The holding in the *Hooks* case appears to have made the entry of an affirmative finding of the use of a deadly weapon discretionary in cases where the court is the trier of fact."). Three judges dissented, relying on *Poe* and stating that having made an affirmative deadly-weapon finding, the "trial judge was required to 'enter' that finding. He ha[d] no discretion to do otherwise." *Hooks*, 860 S.W.2d at 116 (Baird, J., dissenting).

Some courts, in attempting to assuage the apparent conflict between *Poe* and *Hooks*, have concluded that the rule in *Poe*—that the entry of a deadly weapon finding in a judgment must follow the making of the finding—applies only to cases in which the jury was the factfinder, while the rule in *Hooks*—apparently leaving discretion concerning the entry of the finding—applies only to cases in

which the trial court was the factfinder on the issue of guilt. *See McCallum v. State*, 311 S.W.3d 9, 19 (Tex. App.—San Antonio 2010, no pet.) ("If *Hooks* has made the entry of an affirmative finding discretionary, it has done so only in cases where the trial judge acts as the trier of fact."); *Brooks v. State*, 900 S.W.2d 468, 475 (Tex. App.—Texarkana 1995, no pet.) (holding similarly); *Martinez v. State*, 874 S.W.2d 267, 268 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (holding similarly). But there are problems with this approach.

First, the majority opinion in *Hooks* indicated that deadly-weapon matters should not be treated differently depending on whether a jury trial or bench trial occurred. 860 S.W.2d at 112. Second, and more importantly, section 3g(a)(2) of article 42.12, which served as the principal basis for the decision in *Poe*, does not differentiate between jury trials and bench trials; it unambiguously and simply requires deadly-weapon findings to be entered into judgments. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) ("On an affirmative finding under this subdivision, the trial court *shall enter* the finding in the judgment of the court.") (emphasis added); *Loud v. State*, 329 S.W.3d 230, 240 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (Frost, J., dissenting) (recognizing that the "statute in question makes no distinction between bench trials and jury trials").

We conclude that the facts and rationale from *Poe*, which, unlike *Hooks*, particularly concerned a trial court's judgment nunc pro tunc, should govern the

analysis in this case.[6]  Under *Poe* and *Polk*, we conclude and hold that because the trial court had already found, upon entering the original judgment of conviction, that appellant had used or exhibited a deadly weapon in committing aggravated assault, the court did not err by later following section 3g(a)(2) and clerically entering that finding through a nunc pro tunc judgment.  *See Poe*, 751 S.W.2d at 876 ("Once this [deadly-weapon] determination had been made the trial judge was required to reflect this by making a proper entry in the judgment. . . .  Consequently, the failure of the trial judge to do so was not an error of judicial reasoning but rather an error of a clerical nature."); *Polk*, 693 S.W.2d at 394; *see also* Tex. Code Crim. Proc. Ann. art. 42.01, § 1(21) (West Supp. 2013) (stating that a judgment "shall reflect" affirmative findings entered under section 3g(a)(2)); *Montoya v. State*, No. 07-11-00492-CR, 2012 WL 2847902, at *3 (Tex. App.—Amarillo July 11, 2012, no pet.) (mem. op., not designated for publication) (reforming an "N/A" entry in a judgment to reflect an affirmative deadly-weapon finding when the record showed that the appellant had been convicted by the trial court of aggravated assault with a deadly weapon); *In re Garcia*, No. 01-11-00796-CR, 2011 WL 6938509, at *2 (Tex. App.—Houston

---

[6]*Hooks* does not directly answer the question presented in this case, which is whether a trial court has the discretion not to enter a deadly-weapon finding in a final judgment of conviction in which the sentence is not suspended.  *See* 860 S.W.2d at 111 ("We granted the petition for discretionary review to determine whether the court of appeals correctly held that 'the limitation of [section 3g(a)(2) of article 42.12] applies . . . ,' so that the trial court was precluded from placing appellant on probation . . . .").

15

[1st Dist.] Dec. 29, 2011, orig. proceeding) (mem. op., not designated for publication) ("[W]e hold that the trial court, in its judgment nunc pro tunc, entered an affirmative finding on the use of a deadly weapon, which constituted a permissible correction of a clerical error, and the judgment is not void."); *Clark v. State*, 754 S.W.2d 499, 500–01 (Tex. App.—Fort Worth 1988, no pet.) (affirming a judgment nunc pro tunc that added the entry of a deadly-weapon finding when the jury had found the defendant guilty of murder by using a firearm); *Curry*, 720 S.W.2d at 263 (affirming a judgment nunc pro tunc that added the entry of a deadly-weapon finding because the "entry of the [deadly-weapon] finding in the judgment is merely a clerical step necessary to see to it that the affirmative finding is given effect").

To argue that the trial court erred by granting the State's motion for judgment nunc pro tunc, appellant relies in part on our decision in *Johnson v. State*, 233 S.W.3d 420 (Tex. App.—Fort Worth 2007, pet. ref'd). Johnson was charged with attempted capital murder of more than one person in the same transaction. *Id.* at 422. He pled guilty under a plea bargain. *Id.* In convicting him, a trial court initially signed a judgment that stated "NONE" with respect to whether the court had entered a deadly-weapon finding. *Id.* at 422–23. More than four years later, the State filed a motion for judgment nunc pro tunc, alleging that the trial court had inadvertently omitted a deadly-weapon finding. *Id.* at 423. The trial court granted the motion and changed the judgment to state that Johnson had used or exhibited a deadly weapon. *Id.* at 423–24. We agreed with

16

Johnson that the trial court had erred by doing so because (1) the State did not prove that the making of a deadly-weapon finding was part of its plea bargain, and (2) the record did not show any intent of the trial court to find Johnson guilty under allegations that necessarily included the use of a deadly weapon. *Id.* at 426–27. We distinguished cases in which deadly-weapon findings arose as a matter of law. *Id.* at 427–28.

Here, as explained above, the trial court's finding of the use or exhibition of a deadly weapon was a necessary component of appellant's conviction. Therefore, *Johnson* is distinguishable on its facts.[7] And although our opinion in *Johnson* included language indicating that a trial court has discretion to decline to enter a deadly-weapon finding after making it, *see id.* at 425, that language was not necessary to the disposition of the appeal and was therefore nonbinding dicta that we decline to follow. *See Aguirre-Mata v. State*, 125 S.W.3d 473, 476 (Tex. Crim. App. 2003).

For all of these reasons, we conclude that the trial court did not err by granting the State's motion for judgment nunc pro tunc and by correcting the original judgment to add the entry of the deadly-weapon finding that the trial court

---

[7]Another case that appellant relies on, *Fanniel v. State*, is similarly distinguishable. 73 S.W.3d 557, 560 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Because the record shows the trial court never made an affirmative finding on the enhancement paragraph, we consider the trial court's omission to be a judicial error and not a clerical error.").

had previously made.  We overrule appellant's only issue in cause number 02-12-00440-CR.

## Conclusion

For the reasons expressed above, we affirm the trial court's judgment in each cause number.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

GARDNER, J., concurs without opinion.

PUBLISH

DELIVERED:  December 19, 2013