

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0125-14

**VERA ELIZABETH GUTHRIE-NAIL, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
COLLIN COUNTY**

**YEARY, J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.**

## DISSENTING OPINION

The Court declares that whether a *nunc pro tunc* judgment was appropriate here depends upon a question of fact and that "this issue of fact has not been conclusively resolved in the State's favor." Majority Opinion at 2. The question of fact is: Did the trial judge actually exercise its discretion to make a deadly weapon finding in this case (as the Court concedes he was authorized to do under the particular circumstances of this case)? The Court therefore remands the cause for further proceedings in the trial court, presumably

to address this issue with Appellant's participation in the proceedings.

I would not remand the case because I agree with the State that to do so at this stage would be a "useless task."[1] The real question is not factual at all, in my view, but legal: Does the trial judge really have discretion to decline to make a deadly weapon finding under the circumstances? The Court holds that, in a bench trial, the trial judge has discretion to decline to make a deadly weapon finding, even when the use of a deadly weapon is an element of the charged offense. Majority Opinion at 5-8. But the case that the Court cites to support this proposition does not actually do so—at least not explicitly. *Id*. at 6. And my own research fails to uncover a case in which we have squarely addressed the question.[2]

In *Hooks v. State*, 860 S.W.2d 110 (Tex. Crim. App. 1993), upon which the Court today relies, we took pains to distinguish between the "making" of an affirmative finding of

---

[1] *See Blanton v. State*, 369 S.W.3d 894, 900 (Tex. Crim. App. 2012) (citing *Homan v. Hughes*, 708 S.W.2d 449, 454-55 (Tex. Crim. App. 1986)) (explaining that when it is apparent to the reviewing court that a judgment *nunc pro tunc* was properly entered under the circumstances, to nevertheless remand the cause for a hearing on the propriety of that order at which the appellant could be present would be a "useless task").

[2] Indeed, one court of appeals has described the current state of the law with respect to whether a trial judge has discretion not to enter a deadly weapon finding, thus:

> Having made a deadly-weapon finding . . ., did the trial court have any discretion to not affirmatively enter that finding in the judgment of conviction? That question is . . . difficult to resolve, if only because the court of criminal appeals appears to have answered it both ways.

*Roots v. State*, 419 S.W.3d 719, 725 (Tex. App.—Fort Worth 2013, pet. ref'd). As recently as four months ago, the Fourth Court of Appeals held that a trial judge has no such discretion. *Garcia v. State*, No. 04-14-00378-CR, 2015 WL 2255138, at *3 (Tex. App.—San Antonio, May 13, 2015, no pet. h.) (not designated for publication).

a deadly weapon and the trial court's obligation, once such an affirmative finding has in fact been "made," to "enter" that affirmative finding into the judgment of the court.[3] *Id*. at 111-12. The statute makes the "entry" of the affirmative finding, once it has been "made," mandatory. Whether an affirmative finding is "made" that must then be entered into the judgment depends, of course, upon the evidence in the case and the fact-finder's response to that evidence.[4]

Presumably, the fact-finder should always "make" the affirmative finding any time it is satisfied that "it is shown" on the record that a deadly weapon was used or exhibited. TEX. CODE CRIM. PROC. art. 42.13 § 3g(a)(2). There are essentially three alternative scenarios when it comes to deadly weapon findings. First, if there is no evidence of a deadly weapon, then it has not been "shown" that a deadly weapon was used, and the fact-finder may *not* make the finding. Second, the evidence may conflict with respect to whether a deadly

---

[3] *See* TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(2) ("The provisions of Section 3 of this article [authorizing judge-imposed community supervision] do not apply . . . to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court.")

[4] Whether the fact-finder is judge or jury depends upon which of those two entities has been designated the fact-finder at the particular stage of trial at which a deadly weapon finding may be called for. *Fann v. State*, 702 S.W.2d 602, 604-05 (Tex. Crim. App. 1986) (op. on State's motion for reh'g). Like the Fort Worth Court of Appeals in *Roots*, 419 S.W.3d at 727, I see no principled reason to distinguish between trial judge and jury as fact-finder when it comes to discretion *not* to enter deadly-weapon affirmative finding once such a finding has been made. *See* text, *post*.

weapon was used. In that event, it is up to the fact-finder to determine whether use of a deadly weapon has been "shown." If the fact-finder resolves the conflict by finding a deadly weapon *was* used, then an affirmative finding has been made and the statute clearly dictates that the trial court must then enter that affirmative finding in the judgment. The third scenario is the one we have here: the trial judge is the fact-finder and the defendant pleads guilty to an offense "as alleged" in an indictment that has alleged a deadly weapon. In this scenario, the use of a deadly weapon has definitively been "shown," and an affirmative finding must be entered in the trial court's judgment.[5] While the statute does not employ mandatory language at the "making" juncture, it does make it clear enough that such a finding *should* be "made" whenever "it is shown" that a deadly weapon was used. *Id*. And once the affirmative finding is "made," its entry into the judgment is mandatory. *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988).[6]

One consequence of an affirmative finding of the use or exhibition of a deadly weapon

---

[5] *See Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005) (when the indictment alleged that the defendant discharged a firearm, a deadly weapon *per se*, "[b]y properly admonishing applicant and then accepting his guilty plea to the indictment, the trial court *necessarily* determined that applicant used a deadly weapon in the commission of the offense") (emphasis added).

[6] I agree with Judge Keasler that a deadly weapon finding was in fact made in this case. After *Crumpton v. State*, 301 S.W.3d 663 (Tex. Crim. App. 2009), it seems evident enough to me that the trial court actually made an affirmative finding that a deadly weapon was used in this case when it accepted Appellant's guilty plea. Failure to enter that affirmative finding in the judgment, as mandated whenever an affirmative finding is made, was clerical error. *Poe*, 751 S.W.2d at 876. And this is true regardless of whether the trial judge or a jury is the fact-finder that has made the affirmative finding. *Roots*, 419 S.W.3d at 727-28.

is that the trial judge is prohibited from imposing regular community supervision. Obviously, the Legislature did not want the trial judge to have any discretion to impose regular community supervision "when it is shown that a deadly weapon" was used. TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(2). It makes no sense to construe the statute to cede that discretion right back to the trial judge through the back door by giving him the option to simply decline to make an affirmative finding *even when the record definitively establishes the use or exhibition of a deadly weapon*. It blatantly thwarts the legislative will to confer discretion on the trial judge to decline to make the affirmative finding even under circumstances in which—as here—it has unquestionably been "shown" on the record that a deadly weapon was in fact used.

The opinion that the Court cites today does not stand for the proposition that a trial judge has such discretion, either explicitly or by necessary implication. *Hooks* involved the question of the sufficiency of the "entry" of the affirmative finding into the judgment, not the "making" of the finding. We held that the judgment failed to contain the entry of an affirmative finding that was sufficiently specific to deprive the trial judge of his authority to impose regular probation. 860 S.W.2d at 112-14. Insofar as can be garnered from the opinion, nobody tried to reform the judgment—by mandamus or by *nunc pro tunc*—to make it reflect the fact that a deadly-weapon affirmative finding had been *made*, such that its entry into the judgments was mandatory. The opinion did not address the question of whether a

trial judge has the discretion to simply decline to *make* an affirmative finding of a deadly weapon even when "it is shown" and accepted by the fact-finder that a deadly weapon was used.

In *Hooks* itself, the Court seems to have expressly saved for another day the question whether the trial judge had the discretion to "simply decline[] to enter the . . . affirmative finding in the judgment"—even though such a finding had apparently been "effectively made." 860 S.W.2d at 114 n.7 and 111, respectively. The Court nonetheless says we decided the issue in *Hooks* by "necessary implication," citing our opinion in *Garza v. State*, 435 S.W.3d 258, 261 (Tex. Crim. App. 2014). Majority Opinion at 8. In *Garza*, we held that we had decided an issue by necessary implication in *Ex parte Maxwell*, 424 S.W.3d 66 (Tex. Crim. App. 2014). But *Maxwell* was a post-conviction application for writ of habeas corpus—an original proceeding in this Court—in which context we could not have granted relief without deciding every issue necessary to justify that result. *See Garza*, 435 S.W.3d at 262-63; *id*. 263-64 (Price, J., concurring). *Hooks* was a petition for discretionary review, in which context we frequently address discrete issues without reference to whether the lower appellate court may have correctly decided *other* issues that were necessary to *its* final disposition of the case. The Court errs today to regard the question whether the trial court has discretion simply not to "make" an affirmative deadly weapon finding as settled by *Hooks*.[7]

---

[7] It also has not escaped my attention that the author of today's majority opinion relies today on this notion of a holding by necessary implication when, in *Garza* itself, she adamantly opposed it,

In my view, a trial judge as fact-finder lacks the discretion to simply decline to make an affirmative finding, at least so long as he is satisfied from the evidence that "it is shown" that a deadly weapon was used or exhibited.[8] Moreover, for reasons expressed here and in

explaining:

> [T]he Court says that '[a] careful reading of *Maxwell* indicates that a majority of this Court has already passed on this issue—if only by necessary implication. I disagree.
>
>  . . . Instead of assuming that we must have intentionally, but silently, resolved the procedural default issue in the convicted person's favor because that is the only way our disposition in *Maxwell* could have been correct, we should admit that we made a mistake, overlooking the issue that we should have addressed. * * * We should not compound such a mistake by proceeding under the legal fiction that our complete failure to address the issue was actually a silent disposition.

*Garza*, 435 S.W.3d at 271-72 (Keller, P.J., dissenting).

[8] It might be argued that holding that a trial judge lacks the discretion whether to make and enter an affirmative finding of a deadly weapon will adversely impact guilty plea negotiations. The trial judge—so goes the argument—needs the flexibility to decline to make and enter deadly weapon findings. Otherwise, he will be in no position to facilitate a plea bargain by which a criminal defendant agrees to plead guilty in exchange for a judgment of conviction that will avoid the adverse consequences on probation and parole availability that statutorily attend deadly weapon affirmative findings. But, as important as plea bargaining may be to the efficient operation of the criminal justice system, a trial judge has no legitimate role to play in plea bargain negotiations between the parties. *State ex rel. Bryan v. McDonald*, 662 S.W.2d 5, 8-9 (Tex. Crim. App. 1983); *Perkins v. Third Court of Appeals*, 738 S.W.2d 277, 282 (Tex. Crim. App. 1987). His only function is to decide whether to accept the plea. TEX. CODE CRIM. PROC. art. 26.13(a)(2); *see also*, George E. Dix & John M. Schmolesky, 43 TEXAS PROCEDURE: CRIMINAL PRACTICE AND PROCEDURE § 40:68, at 587 (3rd ed. 2011) ("*Once the parties have arrived at an agreement*, it must be presented to the trial court in open court for its approval or rejection.") (Emphasis added). I am confident that the parties can find avenues of agreement that do not involve the trial judge's participation. If nothing else, they can bargain for conviction of some lesser-included offense that would not entail a deadly weapon finding. In any event, even a legitimate policy of judicial facilitation of plea bargaining between the parties could not justify thwarting the manifest prohibition embodied in Article 42.12, Section 3g(a)(2)—that trial judges simply may not grant regular community supervision whenever an affirmative deadly weapon finding is in fact made (and, perforce, entered into the judgment).

Judge Keasler's dissenting opinion today, I believe that what happened in this case did in fact constitute the making of an affirmative finding. Once an affirmative finding has been made, a trial court has no discretion but to enter it into the judgment. *Poe*, 751 S.W.2d at 876. Consequently, I see no extant fact issue under the circumstances that would justify the Court's remand today.[9] With these additional comments, I also respectfully dissent.

FILED:      September 16, 2015
PUBLISH

---

[9] Moreover, I am not sure this case presents a fact issue even if the legal issue had been correctly decided in the manner that the Court implicitly decides it today. The Court finds the entry in the trial court's original judgment of "N/A" serves to raise a fact issue with respect to whether the trial judge really meant to exercise his discretion to decline to make a deadly weapon finding. *See* Majority Opinion at 9("The written entry in the judgment would seem to be an explicit determination that a deadly weapon finding was *not* being made, and it is more explicit than the trial judge's oral pronouncement of guilty 'as set forth in the indictment.'"). This seems to me to put the cart before the horse. The general rule is that, whenever there is a conflict between the oral pronouncement of sentence and the written judgment, the oral pronouncement controls. *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). True, we have also said that a deadly weapon finding is not part of the sentence, and so a trial court does not even have to make an oral pronouncement of a deadly weapon finding to justify entering such an affirmative finding in the judgment. *Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005) ("[A] trial court is not required to orally announce a deadly-weapon finding at sentencing if the allegation of use of a deadly weapon is clear from the face of the indictment.") Even so, I should think that the spirit of the general rule—that the thing itself governs over the mere memorialization of the thing—should nevertheless prevail. The written judgment is just the "the written declaration and embodiment of" what happened. *Madding*, *supra*. As Judge Keasler's dissenting opinion demonstrates, the record reveals that an affirmative finding of a deadly weapon was in fact made in this case. The written judgment should have memorialized that actual finding; it should not now be cited as evidence that the finding was never in fact made.